```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF RHODE ISLAND
_____
                                   )
UNITED STATES OF AMERICA           )
                                   )
     v.                            )    CR. No. 13-043 S
                                   )
GERALD J. SILVA,                   )
                                   )
          Defendant.               )
_____)
```

**OPINION AND ORDER**

WILLIAM E. SMITH, Chief Judge.

Gerald Silva was recently tried and convicted in this Court on six counts of receiving child pornography in violation of 18 U.S.C. § 2252(a)(2) and one count of possessing child pornography in violation of 18 U.S.C. § 2252(a)(4). Following the close of the government's case against him, Silva moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. Silva renewed this motion following the return of the jury's verdict. In both instances, the Court denied the motion. Silva has now filed the instant Motion for a New Trial and Renewed Motion for Judgment of Acquittal (ECF No. 72). For the reasons that follow, Silva's motion is DENIED.

I. Background[1]

Silva's prosecution took place following a joint investigation by the United States Postal Inspection Service ("USPIS") and the Toronto Police Service ("TPS"). The investigation concerned a Canadian company located in Toronto that did business under the name of Azov Films ("Azov"). Azov operated a website through which it sold, among other products, videos and photographs depicting nude prepubescent boys.

The government's case opened with testimony by several of the TPS officers involved in the Azov investigation. This testimony suggested that in May 2011, Canadian law enforcement executed a search warrant at Azov's offices. In the course of the raid, TPS officers shut down Azov's website and seized and analyzed a variety of business records.

These records led investigators to a large number of individuals who had purchased materials from Azov, including Silva. The government presented evidence that Silva had purchased some 75 different titles in 22 separate orders from Azov during a six-month period from October 2010 to April 2011, at a total cost of nearly $1,600. These materials were sent to Silva's residential address in Coventry, Rhode Island.

---

[1] The Court has gleaned the facts from the trial record and views them in the light most favorable to the government. See United States v. Reeder, 170 F.3d 93, 102 (1st Cir. 1999).

The government's principal witness was USPIS Inspector Michael Connelly ("Connelly"), the case agent responsible for the Silva investigation. Connelly testified, in relevant part, that he led the execution of a search warrant at Silva's home which uncovered the materials that Silva had purchased from Azov.[2] Through Connelly's testimony, the government introduced short clips of the videos underlying the seven counts against Silva, as well as several "bonus" photo DVDs that Silva had ordered. The videos included titles such as "FKK Waterlogged," "Vladik Remembered," and "Cutting Room Floor – Vlaviu."

The video clips and photos depicted young boys (seemingly between the ages of approximately five and sixteen) engaged in various activities, almost always in the nude. These activities varied from film to film, but included swimming, dancing, massaging one another with oil on a bed, and having a food fight. In virtually all instances, the boys were fully nude with their genitals plainly visible, though there were occasional scenes in which the boys were at public facilities and were wearing bathing suits.

Connelly's testimony called jurors' specific attention to a handful of scenes and photographs. Among them was a scene in "Cutting Room Floor – Vlaviu" in which a nude boy repeatedly sat

---

[2] Silva contended that he was collecting these materials for use in a presentation on the sexual seduction of minors.

3

atop a basketball while rubbing food on his genitals. In another scene, from "Vladik Remembered," three nude boys wrestled and massaged one another with oil on a bed.

Although the government presented only short segments of the films, Silva later testified in his own defense. While Silva was on the stand, the defense played the full length of all of the videos at issue in the case.[3] The full-length films revealed more of the same type of material shown in the government's clips, and neither party suggested that the clips did not accurately represent the nature of the films.

Following jury instructions and closing arguments, the jury deliberated for less than an hour before returning a guilty verdict on all counts.

II. Renewed Motion for Judgment of Acquittal

    A.   Standard of Review

The Court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Nevertheless, a defendant seeking relief under Rule 29 faces an uphill battle. In considering a motion for acquittal, the Court must determine "whether any rational factfinder could have found that the evidence presented at trial, together with all reasonable

---

[3] Many of the films were played at 2x or 4x fast-forward speed by agreement of the parties.

4

inferences, viewed in the light most favorable to the government, established each element of the particular offense beyond a reasonable doubt."  United States v. Pomales-Lebron, 513 F.3d 262, 267 (1st Cir. 2008) (citations omitted) (internal quotation marks omitted).

    B.  Analysis

Silva proffers two arguments in support of his renewed motion for judgment of acquittal: (1) the government failed to carry its burden of proving that the images in question were lascivious; and (2) the government failed to prove that Silva "knowingly" received child pornography.  Both are unavailing.

    1.  The Lasciviousness Requirement

Conviction under 18 U.S.C. § 2252(a)(2) for receipt of child pornography, and under § 2252(a)(4) for possession of child pornography, requires a finding that the minors depicted were engaged in "sexually explicit conduct."  See 18 U.S.C. §§ 2252(a)(2)(A) and 2252(a)(4)(B)(i).  The term "sexually explicit conduct" is defined in relevant part as the "lascivious exhibition of the genitals or pubic area of any person."  18 U.S.C. § 2256(2)(A)(v).  Silva suggests that the Azov films that he purchased contained mere nudity, and that the government did not prove beyond a reasonable doubt that the images in question depicted the lascivious exhibition of the genitals.

The First Circuit has counseled that "[s]ubject to motions under Rule 29 [], it is up to the jury to determine whether the images . . . constitute . . . lascivious exhibition of the genitals or pubic area." United States v. Frabizio, 459 F.3d 80, 85 (1st Cir. 2006) (internal quotation marks omitted). In assessing the lasciviousness of the materials in question, courts in this Circuit apply the so-called Dost factors. See United States v. Amirault, 173 F.3d 28, 32 (1st Cir. 1999). Nevertheless, trial judges have been cautioned that these factors, while "generally relevant" and capable of "provid[ing] some guidance," are "neither comprehensive nor necessarily applicable in every situation." Id.; see also Frabizio, 459 F.3d at 88 ("There are many reasons for the need for caution about the use of the Dost factors . . . .").

The First Circuit has described the Dost factors as follows: (1) whether the genitals or pubic area are the focal point of the image; (2) whether the setting of the image is sexually suggestive (i.e., a location generally associated with sexual activity); (3) whether the child is depicted in an unnatural pose or inappropriate attire considering her age; (4) whether the child is fully or partially clothed, or nude; (5) whether the image suggests sexual coyness or willingness to engage in sexual activity; and (6) whether the image is intended or designed to elicit a sexual response in the viewer.

6

Amirault, 173 F.3d at 31 (citing United States v. Dost, 636 F. Supp. 828, 832 (S.D. Cal. 1986), aff'd sub nom., United States v. Wiegand, 812 F.2d 1239, 1244 (9th Cir. 1987)). With respect to the fourth factor, the First Circuit has counseled that "mere nudity" is insufficient to independently establish lasciviousness. Id. at 33.

At trial, the Court instructed the jury as to the specifics of the Dost factors, and informed the jury that it could (but was not required to) consider them. Jurors were told that it was up to them to decide the weight, or lack of weight, to be given to each factor, and they were further instructed that they could consider other factors specific to the case.

The jury deliberated for less than an hour before returning a guilty verdict, suggesting that it had little difficulty characterizing the materials as lascivious. Nevertheless, the Court is mindful that where, as here, the defendant seeks relief under Rule 29, a separate judicial finding of evidentiary sufficiency is required. See Frabizio, 459 F.3d at 85.

It is the opinion of this Court that the government's evidence was more than sufficient to sustain a conviction. The Court has assessed the evidence in light of the Dost factors, as well as other factors that the defense has brought to the Court's attention, including that Silva is a "nudist" and that Azov marketed the films in question as promoting nudism.

7

With respect to the <u>Dost</u> factors, the Court finds as follows:

*(1) Whether the genitals or pubic area are the focal point of the image:*

As a general matter, the videos and images in evidence depict young, prepubescent boys at play. In most all instances, they are fully nude, though in several scenes they are wearing bathing suits. The videos and images generally display the boys' bodies in full, rather than focusing on the genitals or other areas. Nevertheless, many of the still images focus on the genital area, and other scenes draw attention to the genitals in various ways (including, for example, a scene involving the young boy atop the basketball, and another scene in which three young nude boys are interviewed while sitting on a couch with the camera located at the level of their genitals).

*(2) Whether the setting of the image is sexually suggestive (i.e., a location generally associated with sexual activity):*

The settings vary widely. The children are shown variously on beaches, at pools, in private homes, aboard trains in "sleeper" cars, in saunas, and in myriad other locations. While, as a general matter, it cannot be said that all of the settings are sexually suggestive, several of the more intimate scenes (including the massage scene) depict the boys together on a bed.

*(3) Whether the child is depicted in an unnatural pose or inappropriate attire considering [their] age:*

Again, the depictions vary widely from image to image. Many of the scenes depict children at play. Some are as innocuous as a group of children playing in a public swimming pool. There are, however, other scenes that depict children in highly unnatural poses, including the basketball scene and a separate scene in which a young boy rolls around while holding his ankles, plainly exposing his genitals and anal area for the camera.

8

*(4) Whether the child is fully or partially clothed, or nude:*

As noted, nearly all of the scenes and images depict fully nude children.

*(5) Whether the image suggests sexual coyness or willingness to engage in sexual activity:*

This factor weighs in Silva's favor. As discussed, the boys are most frequently depicted at play. Though they are most always nude, it cannot be said that the boys act in ways that are sexually coy, and they do not otherwise demonstrate a willingness to engage in sexual activity. If anything, they appear to be relaxed and having fun.[4]

*(6) Whether the image is intended or designed to elicit a sexual response in the viewer:*

In this Court's assessment, this factor is particularly relevant. Within the many hours of film and many hundreds of still images, there is nothing resembling a cohesive story line. Nor do the films and images seem to have any other artistic value of any kind. Indeed, the films and images seemingly depict these boys for no reason other than to showcase their nude bodies. This being the case, it is the Court's conclusion that the videos and images were almost certainly produced in order to elicit a sexual response in those who purchased them.

Viewing the evidence in the light most favorable to the government, as the Court must, the Court concludes that there was ample evidence to sustain a conviction. Based on the government's evidence against him, Silva simply cannot overcome

---

[4] The Court acknowledges that the First Circuit has strongly cautioned against reliance on this particular factor. See United States v. Frabizio, 459 F.3d 80, 89 (1st Cir. 2006) ("Children do not characteristically have countenances inviting sexual activity, and the statute does not presume that they do. By suggesting that the child subject must exhibit sexual coyness in order for an image to be lascivious, the district court in Dost ran the risk of limiting the statute.").

9

the high hurdle imposed by Rule 29 to demonstrate the inability of a rational factfinder to conclude that the videos and images in question were of a lascivious nature.[5]

2. The Knowledge Requirement

Counts one through six charged Silva with "knowingly receiv[ing]" child pornography. To sustain a conviction, the government must have proven that "the defendant 'knowingly received' material that he kn[ew] contain[ed] a 'visual depiction' of a [minor] 'engaging in sexually explicit conduct.'" United States v. Gendron, 18 F.3d 955, 958 (1st Cir. 1994). Proof that a defendant knowingly received child pornography requires a showing of scienter. United States v. Breton, 740 F.3d 1, 13 (1st Cir. 2014). In other words, the government was required to prove that Silva received, and knew he received, child pornography.[6] Id. at 17. "Such knowledge often is shown through circumstantial evidence." Id.

---

[5] In a footnote to his motion, Silva renews his constitutional challenge to the purported vagueness of the term "lascivious." The Court denied Silva's motion on this issue in an oral decision prior to the start of trial based on the previous rejection of the argument by both the Supreme Court and the United States Court of Appeals for the First Circuit. See United States v. X-Citement Video, Inc., 513 U.S. 64, 78-79 (1994); Frabizio, 459 F.3d at 85. The Court declines to address this issue again here.

[6] Conviction on count seven required proof that Silva knowingly possessed child pornography, but Silva does not raise a knowledge argument with respect to this count.

10

There was ample evidence upon which the jury could have sustained a finding that Silva knowingly received child pornography. As an initial matter, Silva did not purchase these materials in one fell swoop; instead, his purchases took place over a six-month period and were separated into some 22 separate orders. If Silva was perturbed by his initial purchase, it did not stop him from continuing to purchase similar items from Azov.

What is more, Silva's claim that he was unaware that the materials contained child pornography is belied by his own actions and testimony. Silva testified that he acquired these materials for use in a hazily-defined presentation on the "subtle seduction of minors with emphasis on the male gender" that he was planning to give in loose connection with his employment as a probation officer. Silva told jurors, in effect, that the videos and images depicted young children as they were being "groomed" to appear in adult pornography. This suggests that Silva was aware of the illicit nature of the materials at the time that he acquired them.

Furthermore, the government introduced the testimony of Kenneth Bell, a detective with the Rhode Island State Police. Detective Bell testified regarding an email that he had received from Silva in May 2011, shortly after the Azov website had been disabled. In that email, which the government characterized as

11

an attempt by Silva to cover his tracks, Silva notifies Bell of the Azov website and indicates that he has "a really bad feeling about what may be happening to those boys." Several weeks later, after Bell had not responded, Silva wrote again to report that the Azov website was no longer active, stating that "I just hope that the [producers of the films] are not scurrying back to their home turf to re-establish themselves. I hope that the authorities are all over them." Whether or not Silva wrote these emails to cover his tracks as the government suggests, they establish definitively that Silva knew that the materials were pornographic in nature.

Once again viewing the evidence in the light most favorable to the government, there was sufficient evidence to demonstrate that Silva knew at the time of purchase and receipt that the videos and images in question contained child pornography. For this reason, Silva is not entitled to relief under Rule 29.

III. Motion for a New Trial

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "In considering a motion for a new trial, district courts may 'weigh the evidence and evaluate the credibility of witnesses, . . . [but] the remedy of a new trial is sparingly used, and then only where there would be a miscarriage of justice and where the evidence preponderates

heavily against the verdict.'" United States v. Merlino, 592 F.3d 22, 32 (1st Cir. 2010) (quoting United States v. Wilkerson, 251 F.3d 273, 278 (1st Cir. 2001)). "Because the district court must generally defer to a jury's credibility assessments, . . . '[i]t is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment.'" Id. at 32-33 (quoting United States v. Cote, 544 F.3d 88, 101 (2d Cir. 2008)).

At trial, the jury viewed firsthand all of the evidence at issue. Jurors heard testimony from Silva himself, who attempted to explain his purchases from Azov as research for his presentation on the seduction of minors. The jury rejected this explanation, and, for the reasons previously discussed, reasonably concluded that the videos and images in question constituted child pornography. In sum, there is no basis upon which to grant Silva the "exceptional" and "sparingly used" relief that he seeks.

IV. Conclusion

For these reasons, Silva's Motion for a New Trial and Renewed Motion for Judgment of Acquittal is DENIED.

IT IS SO ORDERED.

/s/ William E. Smith
William E. Smith
Chief Judge
Date: June 9, 2014