## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR No. 13-43JJM |
| | : | |
| GERALD J. SILVA | : | |

## REPORT AND RECOMMENDATION

Patricia A. Sullivan, United States Magistrate Judge.

This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) and 18 U.S.C. § 3401(i) for proposed findings of fact concerning whether Defendant Gerald J. Silva is in violation of the terms of his supervised release and, if so, for recommended disposition. In compliance with that directive and in accordance with 18 U.S.C. § 3583(e) and Fed. R. Crim. P. 32.1, hearings were conducted by Magistrate Judge Almond on May 8 and 15, 2019, and by me on May 22, June 3 and 25, 2019, after Magistrate Judge Almond recused himself. At the initial appearance on May 8, 2019, the Court ordered that Defendant be detained. For the reasons that follow, I recommend the following: that the Court adopt my proposed finding that Defendant is guilty of all of the charged violations and that the Court impose a sentence of incarceration for four months or time served, whichever is longer, followed by a new term of supervised release of fifteen years with the same conditions that were imposed with the original sentence and with the additional conditions that Defendant be released with GPS monitoring and be required to live at the Houston House for up to one year, until he supplies Probation with an approved residential address and completes SORNA registration with respect to that address.

## I.       BACKGROUND[1]

On September 27, 2012, Defendant, a well-educated lifelong Rhode Island resident with no criminal history, initially appeared on charges based on the receipt and possession of child pornography.  Defendant's case was assigned to Chief Judge Smith, who presided over the trial, and Magistrate Judge Almond, who conducted the arraignment and set conditions of release.  Defendant was continuously released during the pretrial period; there were no compliance issues with any of Defendant's pretrial conditions.

On February 10, 2014, represented by retained counsel of his choice, Defendant was convicted by a jury of six Counts of receipt of child pornography and one Count of possession of child pornography.  These crimes constitute Tier I sex offenses under federal law.  34 U.S.C. § 20911(1), (5)(A)(ii), (7)(G) (sex offense means offense against minor and includes possession of child pornography).  They also are sex offenses requiring registration under the law of Rhode Island.  R.I. Gen. Laws § 11-37.1-3(a) (persons convicted of criminal offense against minor victim must register); R.I. Gen. Laws § 11-9-1.3(a)(4) (possession of child pornography is criminal offense).  As a result of his conviction for these crimes, pursuant to the federal Sex Offender Registration and Notification Act ("SORNA"), 34 U.S.C. § 20901, *et seq.*, Defendant is required to register as a sex offender under federal law.  34 U.S.C. § 20913(a).  Similarly, to the extent that he is present in Rhode Island with the intent to reside or work, the analogous Rhode Island enactment, R.I. Gen. Laws § 11-37.1-1, *et seq.*, also requires Defendant to register as a sex

---

[1] Throughout this exposition of the background, I repeatedly refer to Defendant's Exhibit A ("Def. Ex. A").  This exhibit is Defendant's handwritten closing statement and allocution.  At the final hearing on June 25, 2019, Defendant read this statement in its entirety; it was then admitted as Def. Ex. A.  In this statement, Defendant sets out his reasoning for his stance of resistance and the underpinnings for many of the oral motions and arguments that he presented.  To the extent that this statement allows the Court to present Defendant's positions in his own words, I cite to it in lieu of paraphrasing.

offender.  R.I. Gen. Laws § 11-37.1-3(a).  Most, if not all, states have analogous registration requirements.[2]

On June 27, 2014, this Court sentenced Defendant to seventy-two months of incarceration, to be followed by fifteen years of supervised release with conditions that include the requirement that he must report to Probation within seventy-two hours of release, must notify Probation of any change in residence, must submit to drug testing and must comply with all applicable federal and state laws regarding the registration of sex offenders in the state(s) of residence, employment and school, as well as that he must provide verification of compliance with this requirement to Probation.  Defendant's conviction was affirmed by the First Circuit, which considered and rejected an array of arguments, including his contention that the images in issue were not child pornography because they were not lascivious.  See United States v. Silva, 794 F.3d 173 (1st Cir. 2015).  The Circuit Court specifically held that "the jury's determination that the films depicted 'sexually explicit conduct,' in the form of 'lascivious exhibition of genitals' of children, was thus a rational conclusion drawn from the evidence."  Id. at 182.  During the current proceeding, Defendant advised the Court that his certiorari petition to the United States Supreme Court was denied, although no evidence that he filed such a petition was found.  It also does not appear that Defendant has initiated a habeas proceeding to collaterally attack the conviction or sentence pursuant to 28 U.S.C. § 2255 or otherwise.

---

[2] The requirement that Defendant must register as a sex offender is not optional in the discretion of the Court.  It flows under federal and state law from the offenses of conviction.  It also is not dependent on whether Defendant is subject to ongoing federal or state supervision.  That is, even if this Court were to dismiss the petition and terminate supervision (which I do not recommend), Defendant would remain subject to the obligation to register and, if he fails to do so, he remains at risk of criminal prosecution – both federal and state – for the new crime of failure to register.  See Reynolds v. United States, 565 U.S. 432, 434 (2012) ("The federal [SORNA] requires those convicted of certain sex crimes to provide state governments with (and to update) information, such as names and current addresses, for inclusion on state and federal sex offender registries.  The Act makes it a crime for a person who is 'required to register' under the Act and who 'travels in interstate or foreign commerce' knowingly to 'fai[l] to register or update a registration . . . .'") (internal citations omitted).

After completing his sentence at FCI Danbury in Connecticut, Defendant was released on May 3, 2019.  On May 7, 2019, well more than seventy-two hours after he was released, he appeared at the U.S. Probation Office in Providence, Rhode Island, and spoke to the duty officer, U.S. Probation Officer Derek Dufresne.  Defendant told Officer Dufresne that he was not reporting as required by his conditions, but rather was advising Probation of his intent not to report; that he would not supply a urine sample for drug testing; that he had not registered anywhere as a sex offender and had no intention of doing do; and that he was refusing to comply with Officer Dufresne's instruction to provide his address or contact information.  He told Officer Dufresne that he had expected a warrant to issue based on his intentional failure to appear in the required seventy-two hours and that he wanted a warrant to issue so he could come before the Court.[3]  At 12:15 p.m. on the same day, a handwritten letter signed by Defendant was presented to the Clerk's Office and filed as ECF No. 119.  It is addressed to Judges Smith and Almond and states that, "I am [in] total defiance of my conditions of release, including reporting to Probation, due to my rejection of those conditions."  In the letter, Defendant demanded an immediate hearing.

At 2:37 p.m., still on May 7, 2019, Probation presented its petition and the Court issued a warrant.  The petition charges Defendant with the following violations:

> **Violation No. 1: The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from custody of the Bureau of Prisons.**
>
> **Violation No. 2: The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment or placement on probation and at least two periodic drug tests thereafter.**

---

[3] Officer Dufresne's testimony is summarized *infra* in Section III (A) of this report and recommendation.  It must be noted that Defendant later described this trip to Probation as his attempt to surrender.  During the revocation proceeding, he expressed frustration over the failure of his surrender attempt, which, if successful, would have eliminated the need to find him and arrest him the next day.

**Violation No. 3: The defendant shall notify the probation officer at least ten days prior to any change in residence or employment.**

**Violation No. 4: The defendant shall comply with all applicable federal and state laws regarding the registration of sex offenders in the state of residence, employment and school attendance, and shall provide verification of compliance with this requirement to the probation officer.**

Defendant was arrested the next day, May 8, 2019, at a Rhode Island hotel.  Following his arrest, Defendant immediately appeared before Magistrate Judge Almond.[4]  At the initial appearance, the Court engaged Defendant in colloquy regarding his refusal to have counsel and his desire to exercise his right of self-representation.  Based on this colloquy, the Court allowed Defendant to proceed *pro se*, but appointed Attorney Kevin Fitzgerald as stand-by counsel.[5]  After Defendant advised the Court that he is the victim of a conspiracy and Mr. Fitzgerald stated that Defendant wished to have a revocation hearing and to make certain motions, the matter was continued to May 15, 2019.  In the meantime, based on his refusal to comply with any conditions, the Court ordered that Defendant be detained.  See Fed. R. Crim. P. 32.1(a)(6) (citing 18 U.S.C. § 3143(a) (detention while supervised release violation pending to be imposed unless judicial officer finds by clear and convincing evidence that person is not likely to flee or pose a danger)).

At the May 15, 2019, Defendant presented a series of oral motions.  First, based on contact by the U.S. Marshal's Service with his family while executing the arrest warrant, he made an oral motion for a restraining order preventing any governmental employee, and more

---

[4] The background regarding the proceedings before Magistrate Judge Almond is drawn from the public record.

[5] This colloquy conforms to the requirements of Faretta v. California, 422 U.S. 806 (1975), that a defendant must be questioned to allow the court to determine that he is "literate, competent, and understanding, and that he [i]s voluntarily exercising his informed free will," id. at 835, as well as to warn the defendant of the risks of self-representation.  Id. at 834 ("although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law'"); United States v. Robinson, 753 F.3d 31, 43 (1st Cir. 2014) ("The Supreme Court has declined to require a trial judge to intone any specific magic words, opting instead to make clear that the warnings should be such that 'the record will establish that [the defendant] knows what he is doing and his choice is made with eyes open.'").

narrowly, the U.S. Marshal's Service and U.S. Probation Office, from contacting any member of his family.[6]  With no need to contact Defendant's family once he was detained, the motion was denied.  Second, Defendant asked the Court to issue subpoenas to compel testimony from an array of government officials;[7] the purpose of the subpoenas was to prove that Defendant's underlying prosecution was the result of governmental retaliation against him by a "political organized crime syndicate," as well as to identify "self-admitted pedophilic perverts."  Def. Ex. A at 11.  That motion was denied because the testimony sought was legally irrelevant to the pending violation charges and amounted to a legally improper attempt by Defendant to collaterally attack his judgment of conviction in the context of a supervised release violation proceeding.  ECF No. 123.  Finally, Defendant asked the Court to disqualify Judges Smith and Almond and to transfer the venue of the case to New York to remove it from Rhode Island; that motion was taken under advisement.  On the next day, May 16, 2019, Magistrate Judge Almond denied the motion to transfer venue, but granted the motion to disqualify in light of his and Judge Smith's exercise of judicial discretion to recuse.  ECF No. 123.

On May 22, 2019, Defendant appeared before me.  Based on Defendant's apparent willingness to accept court-appointed counsel, I provisionally appointed Kevin Fitzgerald as his attorney and, to accommodate Defendant's refusal to sign a financial affidavit, asked counsel to provide information sufficient to establish eligibility to the Court *ex parte* by June 3, 2019.  I

---

[6] In the closing statement, Defendant expanded on the reasons for this request, including his belief that he is the victim of a conspiracy of "those . . . who are too privileged to prosecute," that "hostility . . . was directed toward this defendant and family members by some of the same culprits involved in the aggression that was related to the original hearing," and that "all the violence, aggression, hostility, lies, thefts, and manipulations that have occurred in my case since 2011 to present have been perpetrated solely by government agents."  Def. Ex. A at 6-7.

[7] The individuals that Defendant initially asked to have subpoenaed are the following: Rhode Island Department of Corrections employees Richard DelFino, A.T. Wall, Patricia Coyne-Fague; Superior Court Judge Richard Licht; former Governor Lincoln Chafee; Derek Dufresne and other employees of U.S. Probation; and Magistrate Judge Almond and Chief Judge Smith.

advised Defendant that he could restate any of the motions denied by Judge Almond; I also advised him of the charged violations, the potential consequences and his rights and scheduled the case for a revocation hearing on June 3, 2019.

On June 3, 2019, I found Defendant eligible for court-appointed counsel and was prepared to appoint Attorney Fitzgerald as his attorney.  However, Attorney Fitzgerald declined, advising the Court that he had conferred with Defendant who wanted to continue to exercise his right to be *pro se*, as well as that Mr. Fitzgerald could not accept the engagement in that he could not present what Defendant wanted him to do.  Attorney Fitzgerald further advised the Court that, while he could not accept the engagement as counsel, he could continue to assist Defendant as stand-by counsel.  The Court allowed Defendant to continue to represent himself with Attorney Fitzgerald as stand-by counsel.[8]

Next, the Court addressed Defendant's motions.  First, Defendant presented a motion to compel the government to define certain terms (e.g., "erotica"); this motion was denied because the definitions requested were not relevant to the pending violations.  Second, Defendant asked that all witnesses be sequestered; this request was granted.  Third, Defendant asked the Court to subpoena eleven individuals[9] to testify.  He explained that this testimony was sought to prove that his original prosecution was in retaliation for his complaint against a Rhode Island

---

[8] To accommodate Defendant's exercise of his right to self-representation, while protecting him as far as possible from the risks, the Court was liberal in allowing Attorney Fitzgerald to participate in the proceedings.  In his closing statement, Defendant acknowledged that the Court "diligently worked to provide legal counsel to this Defendant which is genuinely appreciated," as well as that "Mr. Fitzgerald was a true defense lawyer and did a magnificent job within the strict limitations that the judicial system . . . imposed upon him."  Def. Ex. A at 12.  The Court observes that Defendant consistently demonstrated the ability to express himself clearly and to ask comprehensible questions. He was also consistently courteous and appropriate throughout these proceedings.

[9] In his second request, Defendant asked for subpoenas to issue for Judges Smith and Almond; Department of Corrections employees Richard DelFino, A.T. Wall and Patricia Coyne-Fague; Superior Court Judge Richard Licht and Magistrate O'Brien; former Governor Lincoln Chafee; Defendant's former defense attorney, Robert Mann; the prosecutor during the underlying case, Assistant United States Attorney Terrence Donnelly; and a postal officer named Connelly.

Department of Corrections supervisor and that numerous state and federal officials (including Judges Smith and Almond) participated in the conspiracy to bring false charges against him. Further, in reliance on his persistent contention of innocence of the underlying charges because the material found by the jury to be "child pornography" is actually not lascivious (except in the eyes of a true pedophile), Defendant also sought to prove that any individual who found the material on which his convictions are based to be lascivious must be a pedophile. Because these arguments appeared to amount to a collateral attack on the underlying conviction and sentence and to bear no relationship to whether Defendant committed the charged violations of conditions of supervised release, the motion for issuance of subpoenas was denied. Last, Defendant restated his motion to transfer venue to New York based on his belief that judges in New York are neutral and have no political connection to Rhode Island. With no reason presented why I could not handle the matter[10] and, even if there was, with no basis for transferring the case to New York, that motion was denied.

Following the rulings on the motions, the evidentiary revocation hearing was conducted. Officer Dufresne testified. One exhibit was marked for identification, but Defendant's objection

---

[10] This changed at the very end of the proceedings before me. In his closing statement, Defendant stated that Judge Almond told him that he would convey to me his opinions regarding the rulings on Defendant's motions. It must be noted that the reasons for these rulings are conveyed through Judge Almond's statements on the record and in his publicly published order, ECF No. 123. Nevertheless, based on Judge Almond's comment, Defendant concluded that this "clearly indicates collusion between the two courtrooms . . . to devise ways to prevent the whole truth about this Defendant's original conviction and current resistance from fully entering into the public domain and record. Thus, sparing Magistrate Almond and his associates from possible prosecutorial investigation and potential incarceration." Def. Ex. A at 4. Defendant also asserted that I am a "politically appointed Magistrate and part of the political structure in R.I." Id. at 5. Finding that none of these allegations are sufficient to mandate recusal, I have not recused myself. See 28 U.S.C. § 455(a); In re United States, 666 F.2d 690, 694-5 (1st Cir. 1981) ("unsupported, irrational, or highly tenuous speculation" is not enough to trigger recusal under § 455(a)); Uniloc USA, Inc. v. Microsoft Corp., 492 F. Supp. 2d 47, 54 (D.R.I. 2007), aff'd, 290 F. App'x 337 (Fed. Cir. 2008) ("If, in the exercise of that discretion, a judge determines that recusal is unnecessary or unwise, the judge is duty bound to sit and hear the case.").

was sustained and it was not admitted.[11]  After the evidence was closed, the matter was

continued to June 25, 2019, for arguments regarding guilt and, if appropriate, to address

sentencing.

At the June 25, 2019 hearing, I first heard arguments regarding guilt from the

government, from Attorney Fitzgerald and, through the reading of his statement (Def. Ex. A),

from Defendant.  I found Defendant guilty of Violation Nos. 1 to 3 but took the issue of guilt as

to Violation No. 4 under advisement.  With respect to sentencing, the government argued for a

sentence of four months, which is at the low end of the guidelines range, followed by fifteen

years of supervised release.  It urged me to recommend such a sentence without regard to

whether I found Defendant guilty of Violation No. 4.  For his part, based on his assumption that

"judgment was determined before any of the Court sessions occurred," in his closing statement,

Defendant argued for a maximum sentence of two years, and did not address the issue of further

supervised release.  Def. Ex. A at 13.  Based on his assumption (derived from his commitment to

continue to resist) that he will continue to cycle through terms of incarceration for future

supervised release violations, Defendant also asked the Court to preemptively schedule the next

hearing two months before his next release date.  Def. Ex. A at 13.  Defendant declined the

opportunity to present further allocution in light of his written statement.  I also took the issue of

sentencing under advisement.

## II.     DEFENDANT'S *PRO SE* DEFENSE

Throughout the proceedings, Defendant repeatedly emphasized his approach to the issues

before the Court – resistance to any action amounting to acquiescence to the corrupt judicial

---

[11] Government's Ex. 1 is a state-issued arrest warrant, with supporting affidavit, charging Defendant with failing to register, which was procured by the Rhode Island State Police on May 9, 2019.  With the existence of the state warrant in evidence through the testimony of Officer Dufresne, and with no evidence to establish the reliability of the supporting affidavit, the government's motion to admit it was denied.

system (for example, an innocent person submitting to the requirement to register as a sex offender), coupled with seeking a platform to publicly state his belief in his own innocence and his accusations against various public officials, including two judges of this Court. He consolidated his thoughts in his closing statement. To accommodate his repeated request that these matters "enter[] into the public domain," the key themes are summarized here.

Defendant's statement opens with his belief that his retained attorney, Mr. Mann, did not present exculpatory evidence to the First Circuit because he feared retaliation by the conspirators and that the First Circuit itself may have been drawn into the "alleged corruption that exists in the R.I. Federal Court system," in that it did not adequately review the record. Def. Ex. A at 1. He adverts to a decision from the Eighth Circuit, United States v. Morrissey, 895 F.3d 541, 548 (8th Cir. 2018), which holds that the Double Jeopardy Clause prohibits convicting a person of both possession and receipt of the same image of child pornography.[12] He seems to suggest that Morrissey may have been the basis for his certiorari petition, which was rejected due to the "politically appointed U.S.S.C.'s excuse[,] . . . the deficiency of the text." Def. Ex. A at 2. These events have caused Defendant to be concerned that the "entire U.S. Judicial system has been corrupted" resulting in Defendant's request for a judge "from a neutral country, such as France, . . . to preside over an American courtroom, or independent international tribunal . . . ." Id. at 2-3.

Defendant objected vigorously to my ruling limiting the proceeding ("refusal . . . to admit exculpatory information") to whether the violations were committed regardless of his challenge to the legitimacy of the conditions and regardless of the reasons for his refusal to cooperate. Id.

---

[12] It is not clear whether this argument was presented during trial or on appeal to the First Circuit. Nor, with a judgment showing that the receipt conduct ended over a year prior to the possession conduct and the imposition of the same concurrent sentence for each count, is it clear why it would apply. United States v. Pires, 642 F.3d 1, 16 (1st Cir. 2011); United States v. Cameron, 662 F. Supp. 177, 182 (D. Me. 2009).

at 3; see id. at 10 ("Court did not allow this Defendant to subpoena witnesses to prove innocence in this hearing.").  Defendant critiqued the Court for failing to discharge its "responsibility to order an investigation by law enforcement from outside District One, and to confront and detain the alleged conspirators," noting that it is the Court's "obligation to issue arrest warrants for the immediate arrest, incarceration, and sequestration in a neutral district of the alleged perpetrators." Id. at 6, 9.  Defendant argued that he has been punished "based on the pedophilic thoughts of others" pursuant to the "whims of alleged corrupt government agents." Id. at 6.  Nevertheless, he states that his purpose is not to "overturn the case, since this can only be accomplished in a Constitutional setting, which . . . no longer exists in an American Federal Courtroom," but rather, to "put my adversaries on notice" of imminent criminal prosecution, and to give them the "opportunity to admit to their crimes and to seek leniency during their sentencing." Id. at 8.  Defendant posited that the Court's failure to uphold the laws "will necessitate and authorize a citizen's arrest, which I am willing to provide." Id. at 9.

As a matter of law, Defendant's core argument that his underlying prosecution was the product of a corrupt conspiracy, which resulted in an invalid conviction (as well as an invalid sentence, including invalid release conditions), is unavailing because a defendant in a revocation hearing is not permitted to assert a defense that challenges the validity of the defendant's underlying conviction.  United States v. Jones, 833 F.3d 341, 343-44 (3d Cir. 2016) (joining Second, Fifth, Seventh, Eighth, Ninth, and Eleventh Circuits and holding that "the validity of an underlying conviction or sentence may not be collaterally attacked in a supervised release revocation proceeding and may be challenged only on direct appeal or through a habeas corpus proceeding"); see United States v. Hall, 735 F. App'x 188, 191 (6th Cir. 2018) (finding, although "Jones is not binding on us, it is highly persuasive"); Neil P. Cohen, The Law of Probation and

Parole, § 22:3 (2d ed. 2019). A conviction's validity may be collaterally attacked only in a separate proceeding, such as under 28 U.S.C. § 2255. United States v. Francischine, 512 F.2d 827, 828-29 (5th Cir. 1975). To probe the viability of this proposition, during the hearing, the Court paused to ask stand-by counsel, an accomplished defense attorney, whether he is aware of any legal citation permitting the Court to consider proof of a conspiracy tainting the underlying conviction during a supervised release revocation proceeding. Mr. Fitzgerald advised that he is not.

Based on this legal conclusion, I permitted Defendant to articulate his arguments, including to read his lengthy statement and to admit it in evidence; however, I did not permit him to subpoena and present testimony from the various officials he is accusing. If Defendant wishes to marshal such a collateral attack, he may attempt to do so in a habeas proceeding. And while Defendant may generally be out of time to bring a habeas petition pursuant to 28 U.S.C. § 2255(f), the statute of limitations bar might be suspended to the extent that his argument is grounded in actual innocence of the underlying crime.[13] McQuiggin v. Perkins, 569 U.S. 383, 386 (2013) ("actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . [or] expiration of the statute of limitations").

## III.   REVOCATION HEARING

### A.   Facts

The relevant facts are relatively straight forward. Officer Dufresne testified that he had supervised Defendant pretrial, but that Officer Anthony Desjardins was his post-conviction supervising officer. He confirmed that Defendant was confined at FCI Danbury in Connecticut

---

[13] This is not the time or place for me to rule, or even comment, on the viability of Defendant's collateral attack on his conviction and sentence, except to note that nothing that I have written in this report and recommendation or that I stated on the record during the supervised release violation proceedings should be interpreted as suggesting that I found compelling or even colorable any of Defendant's conspiracy theories.

until he was released on May 3, 2019.  As of May 7, 2019, Officer Dufresne was generally aware that Defendant was planning to refuse to comply with conditions.[14]

On May 7, 2019, Officer Dufresne testified that Defendant appeared at Probation's office in Providence, Rhode Island, at approximately 10:00 a.m.  As duty officer that day, Officer Dufresne's responsibility was to meet with Defendant and go over his conditions to make sure that he understands and will comply.  Defendant told Officer Dufresne that he had intentionally not appeared until after the seventy-two-hour deadline and that he expected that a warrant should have issued; he demanded to know why there was no warrant and he told Officer Dufresne that he wanted a warrant because he wanted to see a judge.  Defendant refused to answer Officer Dufresne's questions about his address or contact information and refused to report the next day when Officer Desjardin would be available.  Defendant refused to give a urine sample for drug testing and stated that he would not do so in the future.  Defendant told Officer Dufresne that he had not registered as a sex offender anywhere and that "he would not be registering."  Officer Dufresne assured him that Probation wanted to work with, not against, him, but Defendant stated that he did not want to comply and that his purpose in appearing at Probation was not to report as required, but to advise Probation that he did not intend to report.

After Defendant left Probation's office, its petition for a warrant was granted and the warrant was executed.  Officer Dufresne testified that he became aware that Defendant was arrested at a hotel in Rhode Island on the next day, May 8, 2019, at approximately 7:00 a.m. in the morning, and that, after he was arrested, on May 9, 2019, the State issued a warrant based on Defendant's failure to register.

---

[14] Defendant was frustrated by his inability to prove through Officer Dufresne (who lacked answers because he was not the supervising officer) that he (Defendant) had been unwavering in his refusal ever to comply with release conditions, long prior to his release.  Since this fact seemed important to Defendant who repeatedly incorporated it into his questions, I have accepted it as proven even though his questions are not evidence.

I found Officer Dufresne's testimony to be highly credible.  Defendant's attempt to undermine its reliability based on Officer Dufresne's failure to issue a warrant himself while Defendant was in Probation's office was unavailing – Officer Dufresne lacks the legal authority to issue a warrant.  Rather, as a Probation officer, he can initiate the filing of a petition to the Court, which is what he did.  Further, Officer Dufresne credibly testified that, while Defendant was present in his office, he was focused on trying to work with Defendant.

The evidence does not establish where Defendant was located during the period between his release by BOP from FCI Danbury in Connecticut on May 3, 2019, and his appearance at Probation in Providence, Rhode Island, at 10:00 a.m. on May 7, 2019, and his arrest at a Rhode Island hotel at 7:00 a.m. on May 8, 2019.

### B.    Law Applicable to Violations

The preponderance of the evidence is the applicable standard for the revocation of supervised release.  See Johnson v. United States, 529 U.S. 694, 700 (2000) (violations of supervised release need only be found by a judge under a preponderance of the evidence standard) (citing 18 U.S.C. § 3583(e)(3)); United States v. Bergeron, CR No. 03-116S, 2011 WL 1458787, at *1 (D.R.I. Mar. 15, 2011) (government bears burden of proving defendant violated supervised release conditions by a preponderance of the evidence).  Preponderance of the evidence "is a more-likely-than-not standard."  United States v. Tanco-Pizarro, 892 F.3d 472, 475 (1st Cir. 2018).  In making findings based on a preponderance of the evidence, the Court may rely on plausible inferences that are grounded in the evidence; it may not rely on guesswork or speculation.  See United States v. Montanez-Quinones, 911 F.3d 59, 73 (1st Cir. 2018); Figueroa v. Gelb, Civil Action No. 13-13008-IT, 2016 WL 3147354, at *2 (D. Mass. Apr. 20, 2016).  In a supervised release proceeding, the defendant does not have a full Sixth Amendment

right to confront adverse witnesses.  United States v. Rodriguez, 919 F.3d 629, 2019 WL

1348280, at *3 (1st Cir. Mar. 26, 2019).  Accordingly, reliable hearsay evidence can be admitted.

Fed. R. Evid. 1101(d)(3); United States v. Rondeau, 430 F.3d 44, 48 (1st Cir. 2005).  In deciding

whether to consider hearsay, the court must weigh not only reliability, but also the government's

proffered reason for not producing the declarant.  United States v. Portalla, 985 F.2d 621, 622

(1st Cir. 1993); see Fed. R. Crim. P. 32.1 (b)(1)(B)(iii), (2)(C); Fed. R. Evid. 1101(d)(3).

Under federal law, offenses proscribed by 18 U.S.C. § 2252(a) are sex offenses pursuant

to the Sex Offender Registration and Notification Act ("SORNA"), 34 U.S.C. § 20901, *et seq.*

Through 34 U.S.C. § 20913, SORNA delegates authority to the Attorney General to issue

regulations regarding the registration requirements imposed on sex offenders.  Gundy v. United

States, 139 S. Ct. 2116, 2121, 2130-31 (2019) (holding § 20913 as constitutional delegation of

authority).  Having been convicted of receipt of child pornography under 18 U.S.C. § 2252(a)(2)

and possession of child pornography under 18 U.S.C. § 2252(a)(4), Defendant is subject to the

SORNA registration requirement.  34 U.S.C. § 20913; see United States v. Hyman, 665 F.

App'x. 44, 48 (2d Cir. 2016) ("A violation of 18 U.S.C. § 2252 (the conviction here) subjects a

defendant to the registration requirement.").  Under 18 U.S.C. § 2250, a person who "travels in

interstate . . . commerce" and "knowingly fails to register or update a registration as required by

[SORNA]" commits the offense of failure to register.  See United States v. Parks, 698 F.3d 1, 3

(1st Cir. 2012) ("SORNA imposes criminal sanctions on convicted sex offenders subject to its

registration requirements who travel in interstate commerce and knowingly fail to register or

update their registrations.").

There is no separate federal registration program for sex offenders required to register

under SORNA who are released from federal custody; rather, federal law requires such sex

offenders to integrate into the sex offender registration programs of the states.  National

Guidelines for Sex Offenders Registration Notification ("Guidelines"), Office of Justice

Programs, at 47, *available at* https://www.smart.gov/pdfs/final_sornaguidelines.pdf.[15]  These sex

offenders are required to comply with the SORNA registration requirements in the jurisdictions

in which they reside, are employed or attend school as mandatory conditions of their federal

supervision, pursuant to 18 U.S.C. §§ 3563(a)(8), 3583(d).  Upon release from federal custody,

the Guidelines require that the jurisdiction to which such a sex offender goes to reside following

release from federal custody must require the sex offender to appear in person to register within

no more than three business days.  Guidelines at 48.  If the offender fails to appear within that

period of time, proceedings for violation of the registration requirements may be initiated.  Id.

     Rhode Island law is stricter.  Registration is required by R.I. Gen. Laws § 11-37.1-3(a).

Following the release from custody, the initial registration must be completed in the "city or

town in which the person intends to reside within twenty-four (24) hours of their release from

confinement."  R.I. Gen Laws § 11-37.1-4(f).

    **C.**    **Proposed Findings of Fact and Recommendation Regarding Guilt for All Charged Violations**

     Defendant's guilt of the offenses of failing to report within seventy-two hours of release,

of refusing to submit a requested sample for drug testing, and of refusing to supply Probation

with his address is established by overwhelming and uncontradicted evidence.  Based on the

evidence, I found him guilty of each of Violation Nos. 1, 2 and 3.

     For Violation No. 4, the following are established facts and/or conclusions of law:

- Defendant's crimes (receipt/possession of child pornography) are subject to the SORNA registration requirements requiring registration under state and federal law;

---

[15] Issued on August 2, 2008, these Guidelines were adopted to carry out the statutory directive to the Attorney General in 34 U.S.C. § 20912(b) to issue guidelines to interpret and implement SORNA.  Guidelines at 3.

- Until May 3, 2019, Defendant was in BOP custody in Connecticut;

- Defendant was released from BOP custody on May 3, 2019;

- Three business days later, Defendant was in Rhode Island at the U.S. Probation Office by 10:00 a.m. on May 7, 2019;

- Defendant was in a Rhode Island hotel on May 8, 2019, at 7:00 a.m. in the morning, when he was arrested;

- Prior to starting to serve his sentence, Defendant had always lived in Rhode Island;

- During the days from May 3 through May 8, 2019, Defendant did not register anywhere;

- At all relevant times, Defendant had the specific intent consciously to flout the law by failing to register, as established by his statements to Officer Dufresne, his letter to Judges Almond and Smith (ECF No. 119) and his statements on the record during the supervised release proceedings.[16]

In analyzing these facts/conclusions, the Court is mindful that the charged violation is not that Defendant committed the specific crime of failing to register under the law of any specific state, but rather that he failed to comply with the supervised release condition of registering as required by state and federal law and of verifying that he had complied with Probation.  I find by a preponderance of the evidence that Defendant failed to comply with this condition.

As to the federal registration requirement, it is established that, from his release on May 3 until his arrest on May 8, 2019, Defendant did not register anywhere as a sex offender and that he continues to refuse to do so.  Defendant's repeated statements that he will not register demonstrate that he acted with not just general intent, but with specific intent.  It is further proven that, when Defendant was released in Connecticut on May 3, 2019, he was subject to the

---

[16] The law requires proof only of general intent; specific intent to consciously flout the law is beyond what the law requires.  United States v. Thompson, 431 F. App'x 2, *3-4 (1st Cir. 2011) (SORNA requires only showing of general intent).

17

SORNA federal reporting requirement, and that he reported in person to the Probation office in Providence, Rhode Island, on May 7, 2019, establishing that he traveled in interstate commerce. It is further proven that, as of May 8, 2019, Defendant was still in Rhode Island and still unregistered based on the issuance of a state warrant for failure to register a day later, on May 9, 2019.  Based on this evidence, I find that the government has proven by a preponderance of the evidence that Defendant is guilty of Violation No. 4, based on noncompliance with federal law regarding sex offender registration, because the facts establish that Defendant traveled in interstate commerce and knowingly failed to register in any state within three business days of his release, as well as that he failed to provide verification to Probation of compliance because he had not complied and did not intend to comply.

As to the Rhode Island registration requirement, the evidence (including Defendant's prior residence in Rhode Island and his presence in Rhode Island on May 7 and 8, 2019) permits the plausible inference that, upon release, Defendant intended to live somewhere in Rhode Island, yet had failed to register anywhere in Rhode Island, despite having been released for more than twenty-four hours.  See R.I. Gen Laws § 11-37.1-4(e).  While the evidence does not establish that Defendant had been residing in Rhode Island for more than twenty-four hours when he was arrested at a Rhode Island hotel, that is not what is required; rather, initial registration must be completed within twenty-four hours of the release from incarceration for an individual with the intent to reside in Rhode Island.  Id.  Recognizing that the government's burden is to prove the charged violation by a simple preponderance, I also find Defendant guilty of Violation No. 4 based on the failure to comply with Rhode Island law, as well as on his failure to verify compliance with Rhode Island law to Probation.

**IV.    SENTENCING**

18

## A.      Law Applicable to Sentencing

According to 18 U.S.C. § 3583(e)(3), the Court may revoke a term of supervised release and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, if the Court finds by a preponderance of the evidence that the defendant has violated a condition of supervised release. The prison term is limited in that Defendant, who was on supervision for Class C felony, may not be sentenced to a term beyond two years.  However, the two-year statutory maximum is refreshed with each violation and will apply to any potential future violation, with no credit for terms of incarceration for previous violations.  United States v. Hall, CR No. 05-126WES, ECF No. 65 at 3-4 (D.R.I. Jan. 2, 2019); see United States v. Harris, 878 F.3d 111, 119 (4th Cir. 2017), cert. denied, 139 S. Ct. 59 (2018) (collecting cases from Second, Third, Fifth, Seventh, Eighth, Ninth, Eleventh and D.C. Circuits); see also United States v. Porter, 905 F.3d 1175, 1182 (10th Cir. 2018).

According to 18 U.S.C. § 3583(h) and § 7B1.3(g)(2) of the United States Sentencing Guidelines ("USSG"), when a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized, the Court may impose a new term of supervised release.  The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release.  In this case, the authorized statutory maximum term of supervised release is life.

Section 7B1.1 of the USSG provides for three grades of violations (A, B and C). Subsection (b) states that where there is more than one violation, or the violation includes more than one offense, the grade of violation is determined by the violation having the most serious grade.  Grade B violations[17] are conduct constituting any other offense punishable by a term of imprisonment exceeding one year, while Grade C violations are conduct constituting an offense punishable by a term of imprisonment of one year or less; or a violation of any other condition of supervision.  Section 7B1.3(a)(1) states that upon a finding of a Grade B violation, the Court shall revoke supervision, while upon a finding of a Grade C violation, the Court may revoke, extend or modify the conditions of supervision.  In this case, guilt on Violation No. 4 establishes that Defendant has committed a Grade B violation; therefore, the Court shall revoke supervision.  However, if the Court finds Defendant not guilty of Violation No. 4, but guilty on Violation Nos. 1, 2 and 3, what remains is a Grade C violation; in that event, the Court may revoke, extend or modify the conditions of supervision.

Section 7B1.4(a) of the USSG provides that the Criminal History Category is the category applicable at the time the defendant was originally sentenced.  In this instance, Defendant was a Criminal History Category I at the time of sentencing.  Should the Court revoke supervised release, the Revocation Table provided for in § 7B1.4(a) provides the applicable imprisonment range.  For a Grade B violation committed by a defendant classified as Criminal History Category I, the applicable range of imprisonment is four to ten months.  For Grade C violations, the applicable range of imprisonment is three to nine months.

Should the Court find that the defendant has committed a Grade B or C violation, § 7B1.3(c)(1) states that where the minimum term of imprisonment determined under § 7B1.4 is at

---

[17] Grade A is not in issue in this case.

least one month, but not more than six months, the minimum term may be satisfied by (a) a sentence of imprisonment; or (b) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in § 5C1.1(e) for any portion of the minimum term.  Should the Court find that the defendant has committed a Grade B or C violation, § 7B1.3(c)(2) states that where the minimum term of imprisonment determined under § 7B1.4 is more than six months but not more than ten months, the minimum term may be satisfied by (a) a sentence of imprisonment; or (b) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in § 5C1.1(e), provided that at least one half of the minimum term is satisfied by imprisonment.  The first provision, which allows for alternatives for any portion of the minimum term, applies to this matter.

As itemized in 18 U.S.C. § 3583(e), the factors that the court may consider in setting the length of the sentence to be imposed following a revocation of supervised release are some (but not all) of the sentencing factors listed in 18 U.S.C. § 3553(a).  As relevant here, they include: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and the applicable guidelines and policy statements issued by the Sentencing Commission.  18 U.S.C. §3553(a).  The USSG makes clear that the sanction for a supervised release violation should focus on the defendant's failure to follow the court-imposed conditions as a "breach of trust" and not on the need to punish the new criminal conduct.  USSG § 7A.3(b).

### B.    Recommended Sentence

In light of Defendant's stated intention never to comply with Court-imposed conditions,[18] sentencing in this case poses a profound conundrum for the Court: the prospect that what could become life in prison may result from Defendant's intent to continue to resist compliance with any of his conditions of supervision, particularly those requiring him to register as a sex offender, which also exposes him to prosecution for a new crime.  For starters, Defendant faces the potential for a lifetime term of supervised release.  18 U.S.C. § 3583(h); USSG § 7B1.3(g)(2).  And although there is a two-year statutory cap on how much incarceration may be imposed for any single set of violations, that cap is refreshed each time there are new violations. See Hall, CR No. 05-126WES, ECF No. 65 at 3-4.  In effect, Defendant can be incarcerated (and he asks the Court to incarcerate him) for a term of two years, with an extended term of supervision.  And if he commits the same violations upon release the next time, the same consequence may be imposed, resulting in a pernicious and unnecessary pattern that may persist for the rest of Defendant's life.  See United States v. Apodaca, 641 F.3d 1077, 1085-88 (9th Cir. 2011) (Fletcher, J., concurring)) ("the Sentencing Commission has recommended a lifetime term of supervised release for every child pornography offender"); United States v. C.R., 792 F. Supp. 2d 343, 519-20 (E.D.N.Y. 2011) (rejecting guideline's recommendation for a lifetime term of supervised release for a non-production offender as "too severe and inhibitory of the total rehabilitation possible while defendant is still in his early twenties").

---

[18] During argument on sentencing, Defendant stated that Probation had failed to support him in his attempt to find post-release housing.  Based on this comment, I asked Attorney Fitzgerald whether more assistance or support from Probation might alter Defendant's determination to refuse to abide by any conditions.  After being reminded of his Fifth Amendment right not to incriminate himself, Defendant insisted on answering the question himself: "No, I'm not going to comply with any conditions of probation, Your Honor."

The government requests a sentence of four months incarceration followed by a fifteen-year term of supervised release with the same conditions.  In making this recommendation, the government noted that such a sentence falls near or at the lowest edge of the guidelines, depending on whether these are classified as B or C violations, and therefore adequately addresses the sentencing goals of punishment of the breach of trust and general deterrence.  The government acknowledged the difficulty in this case of achieving the sentencing goal of deterring future noncompliance by Defendant.  Nevertheless, the government emphasized that these conditions, particularly those arising from SORNA, were imposed by the Court because society has an interest in monitoring people who have been convicted of sex offenses involving minors to ensure the safety of the community and to facilitate rehabilitation.  For his part, based on his belief that he can never find justice in an American federal court, Defendant requested "the full 2 yrs. sentence so as to relieve everyone involved from having to deal with the same issue every few months and for this Court to issue an order for a hearing at least two months prior to my next release date, hopefully by teleconference, to expedite the next challenge without all the drama that occurred this time."  Def. Ex. A at 13.

I cannot accept either Defendant's proposal or the premise on which it is based.  Instead, I have strived to forge a recommendation designed to give Defendant the best shot at breaking this cycle now by persuading him to comply with Court-imposed conditions, which he plainly is fully capable of doing, while taking advantage of his freedom to pursue a collateral attack on his conviction, which is his right to do.  Mindful of the need to punish the breach of trust, the § 3553(a) factors of deterrence and public safety concerns, particularly those implicated by the ongoing failure to register, I concur with the government's proposal and recommend a sentence of four months, or time served, whichever is longer.  I further recommend that the Court

reimpose the same fifteen-year term of supervision to follow, with the same conditions as before.

I further recommend that, upon release from the incarcerative term, Defendant shall be placed on

GPS monitoring and be required to live at the Houston House, with the intent that these two

conditions shall continue for up to a year, but that they shall be lifted as soon as Defendant

identifies a residence that is approved by Probation and registers in the pertinent community.

## V.   CONCLUSION

Based on the foregoing factual findings and legal conclusions, I recommend that the

Court adopt my proposed finding that Defendant is guilty of all of the charged violations and that

the Court impose a sentence of incarceration for four months or time served, whichever is longer,

followed by a new term of supervised release of fifteen years.  I further recommend that, while

on supervised release, Defendant be required to comply with the following conditions:

The defendant shall participate in a program of mental health treatment as directed
and approved by the Probation Office.

The defendant shall participate in a sex offender specific treatment program as
directed by the probation officer and also be required to submit to periodic polygraph
testing at the discretion of the probation office as a means to ensure he is in
compliance with the requirements of supervision or treatment.

The defendant shall contribute to the cost of all ordered treatment and testing based
on ability to pay as determined by the probation officer.

The defendant shall comply with all applicable federal and state laws regarding the
registration of sex offenders in the state of residence, employment and school
attendance, and shall provide verification of compliance with this requirement to the
probation officer.

The defendant shall permit the probation officer, who may be accompanied by either
local, state, or federal law enforcement authorities, upon reasonable suspicion of a
violation of supervision, to conduct a search of the defendant's residence, automobile,
workplace, computer, and other electronic communication or data storage devices or
media.

The defendant must submit to unannounced examination of his computer or other
electronic equipment by the probation officer, who may be accompanied by either

local, state, or federal law enforcement authorities, which may include retrieval and copying of all data from the computer to ensure compliance with this condition.  In addition, the defendant must consent to the removal of such equipment for the purpose of conducting a more thorough investigation and must allow, at the discretion of the probation officer, installation on the defendant's computer any hardware or software system to monitor his computer use.

The defendant shall have no contact with any child under the age of 18 without the presence of an adult who is aware of the defendant's criminal history and is approved, in advance, by the probation officer.

The defendant shall not loiter in areas where children congregate. These areas include, but are not limited to, schools, daycare centers, playgrounds, arcades, amusement parks, recreation parks and youth sporting events.

The defendant shall not be employed in any occupation, business, or profession or participate in any volunteer activity where there is access to children under the age of 18, unless authorized, in advance, by the probation officer.

The defendant shall live at a residence approved by the probation office, and not reside with anyone under the age of 18, unless approved, in advance, by the probation office.

The defendant shall not possess any material, including videos, magazines, photographs, computer-generated depictions, or any other forms that depict sexually explicit conduct involving children.

The defendant shall notify the probation officer of all computer and other electronic communication or data storage devices or media owned or operated by the defendant at the commencement of supervision, and immediately report any additional software purchases, acquisitions, or use during the term of supervision.

The defendant shall not maintain a post office box, unless approved by the probation officer.  He shall also report all mailing addresses used by him and immediately report any changes.  In addition, the defendant shall not receive any prohibited items by mail at any of these locations.

For up to the first year of supervised release, the defendant shall reside at a residential re-entry center, preferably the Houston House in Pawtucket, Rhode Island.  While at said facility, the defendant shall comply with all policies, procedures, and regulations therein.  This condition shall end upon Defendant's providing a residential address approved by Probation and complying with his duty to register as a sex offender at such address.

While residing in the residential re-entry center, the defendant shall be subject to GPS monitoring.  The defendant shall pay the cost of monitoring at the contract rate in effect at the time of monitoring.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party.  See Fed. R. Crim. P. 59(b); DRI LR Cr 57.2(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
July 24, 2019